O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MORENO,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>            Defendant. | NO. CV 14-3829-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

      On May 28, 2014, plaintiff filed a Complaint seeking review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). (ECF No. 3.) On July 9, 2014, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 11.) On February 28, 2015, the parties filed a Joint Stipulation ("Joint Stip."), in which: plaintiff seeks an order reversing the Commissioner's decision and directing the immediate payment of benefits or, in the alternative, remanding the matter for further proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (Joint Stip. at 30-33.) The Court has taken the parties' Joint Stipulation under submission without oral

argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 19, 2010, plaintiff protectively filed his application for a period of disability, DIB, and SSI. (Administrative Record ("A.R.") 15, 145-51, 152-61.) Plaintiff, who was born on October 7, 1971[1] (*id.* 145, 152), claims to have been disabled since November 22, 2006, due to: a bipolar disorder, anxiety, depression, and paranoia (*id.* at 15, 194). Plaintiff has past relevant work experience as a warehouse worker. (*Id.* 22.)

After the Commissioner denied plaintiff's claim initially (A.R. 15, 97-105) and on reconsideration (*id.* 15, 107-12), plaintiff requested a hearing (*id.* 15, 113). On October 4, 2012, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Lawrence D. Wheeler (the "ALJ"). (*Id.* 15, 64-91.) On November 21, 2012, the ALJ denied plaintiff's claim (*id.* 15-23), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-6). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and that plaintiff has not engaged in substantial gainful activity since November 22, 2006, the alleged onset date of his disability. (A.R. 17.) The ALJ determined that plaintiff has the severe impairments of bipolar disorder, post-traumatic stress disorder, and a history of substance abuse. (*Id.*) The ALJ concluded that plaintiff does not have

---

[1] On the alleged disability onset date, plaintiff was 35 years old, which is defined as a younger individual. (*See* 20 C.F.R. § 404.1563.)

2

an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (*Id.* 18.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: no work involving fast paced quotas; no work requiring public contact; and no work involving more than occasional contact with peers." (A.R. 18.) The ALJ further determined that plaintiff is capable of performing his past relevant work as a warehouse worker, because "[t]his work does not require the performance of work-related activities precluded by [plaintiff]'s [RFC]." (*Id.* 22.)

Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from November 22, 2006, the alleged onset date, through the date of the ALJ's decision. (*Id.* 22.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and

the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff claims that the ALJ erred in failing to properly: (1) consider the opinion of his treating psychiatrist, Dr. Amanda Ruiz, and consultative examiner, Dr. Estelle Toby Goldstein, a board-certified psychiatrist; (2) consider his subjective complaints; (3) consider lay witness statements; and (4) pose a proper hypothetical to the vocational expert ("VE"). (Joint Stip. at 2-3.)

\\
\\
\\
\\

I. **The ALJ Failed To Properly Consider The Opinions Of Plaintiff's Treating Psychiatrist, Dr. Ruiz, and Consultative Examiner, Dr. Goldstein.**

An ALJ is obligated to take into account all medical opinions of record, resolve conflicts in medical testimony, and analyze evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The opinion of a treating or examining physician is entitled to greater weight than that of a non-examining physician. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); see also 20 C.F.R. § 416.927(c). When an examining physician's opinion is not contradicted by the opinion of another physician, it may be rejected only for "clear and convincing" reasons. Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When it is contradicted by another doctor, the ALJ can reject the examining physician's opinion only if he articulates "specific and legitimate" reasons supported by substantial evidence in the record. Ghanim, 763 F.3d at 1161; Garrison, 759 F.3d at 1012; see also Ryan, 528 F.3d at 1198.

A. Relevant Medical Evidence

On June 5, 2012, plaintiff's treating psychiatrist, Dr. Amanda Ruiz, completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form. (A.R. 326-28.) On the form, Dr. Ruiz opined that plaintiff would have "marked" difficulties in: understanding and remembering both short, simple instructions and detailed instructions; carrying out detailed instructions; making simple work-related decisions; interacting with the public, supervisors, and coworkers; responding appropriately to work pressures in a usual work setting; and experiencing changes in a routine work setting. (Id. 326-27.) Dr. Ruiz assessed plaintiff as "moderately" limited in his ability to carry out short, simple instructions. (Id. 326.)

On March 8, 2011, Dr. Estelle Goldstein, a board-certified psychiatrist, performed a

consultative psychiatric evaluation of plaintiff. (A.R. 250-55.) In her report, Dr. Goldstein detailed: her general observations; plaintiff's description of his symptoms and medical history; plaintiff's description of his family and social history; and plaintiff's description of his current level of functioning. (*Id.* 250-52.) Dr. Goldstein also performed a mental status examination of plaintiff and diagnosed him with: polysubstance abuse, resolved for four years; bipolar illness; and post-traumatic stress disorder. (*Id.* 252-54.) Plaintiff was assessed as having a GAF score of 50.[2] (*Id.* 254.) Dr. Goldstein assessed plaintiff's limitations as follows:

> [Plaintiff's] ability to understand remember and perform instructions is mildly limited for simple tasks and moderately limited for complex tasks. [Plaintiff's] ability to maintain focus and concentration is moderately limited. His ability to interact with the public is severely limited.
>
> His ability to interact with coworkers and supervisor is moderately limited. [Plaintiff's] ability to comply with job rules, such as safety and attendance, is mildly limited. His ability to respond to changes in a routine work setting is mildly limited. His ability to respond to work pressure in a usual setting is moderately limited. His daily activities are mildly limited.

(*Id.* 254.)

On April 25, 2011, Deborah Hartley, a state agency reviewing psychiatrist, opined that plaintiff was markedly limited in his ability to understand, remember, and carry out detailed

---

[2] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning without regard to impairments in functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed.2000). A GAF rating of 41–50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.* at 34.

instruction and in his ability to interact appropriately with the general public. (A.R. 273-74.) Dr. Hartley found that, given his limitations, plaintiff can perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but he cannot relate to the general public. (*Id.* 275.)

In determining plaintiff's RFC, the ALJ noted that "based upon [plaintiff's] overall condition . . . [plaintiff] would be able to perform at all exertional levels not involving fast-paced quotas, public contact, or more than occasional contact with peers." (A.R. 22.) The ALJ did not specify which medical opinion(s) he credited or discuss how he weighed the three psychiatrists' opinions, but his RFC assessment reflects some of the limitations assessed by Drs. Goldstein and Hartley. (*See id.*) Accordingly, it appears that the ALJ accorded greater weight to the opinions of the examining and reviewing psychiatrists than to the opinions of plaintiff's treating psychiatrist, Dr. Ruiz.

### B. Treating Psychiatrist Dr. Ruiz

The ALJ did not give "controlling weight" to Dr. Ruiz's opinion as set forth in the June 2012 form she completed, because as explained below, he found that her opinion was: inconsistent with treatment notes demonstrating plaintiff's progress in response to therapy and medications; inconsistent with plaintiff's ability to perform certain daily activities and obtain passing grades in college welding courses; and not well supported. (A.R. 21-22.) However, the ALJ's reasons for discounting Dr. Ruiz's opinion are not legitimate reasons supported by substantial evidence, and thus, they do not support the ALJ's rejection of Dr. Ruiz's opinion.

First, the ALJ improperly determined that Dr. Ruiz's opinion should be discounted because, although plaintiff's mental and emotional condition fluctuated, his "condition clearly responded to therapy and medications on many documented occasions" and "deteriorated when he has not taken his medications as prescribed, or has relapsed on drugs and/or alcohol." (A.R. 21.)

"Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion.  No physician opined that any improvement would allow Rodriguez to return to work."); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").  As the ALJ recognized, the record reflects that the severity of the symptoms resulting from plaintiff's mental impairments "fluctuated" significantly. (*See* A.R. 19-21.)  There is also significant evidence that plaintiff experiences depression and mood deterioration even when he is substance free and compliant with his medication regime. (*See, e.g., id*. 243 (10/22/10 - "[a]dmits med compliance x 3 weeks" but "[m]ild depression occurring with negative thoughts and irritability and hopeless feeling" and "[a]dmits racing thoughts interfering with concentration and causing increased anxiety [symptoms]."); *id.* 243 (11/5/10 - "[a]dmits medication 'calms me down'" but "[m]ood anxious and affect constricted" and "[a]dmits mood swings interfere with social relationships"); *id*. 242 (12/23/10 - "compliant with the meds" but "thought racing (jump from one subject to another)" and "still feeling depressed, easily ang[]ry, fatigued."); *id.* 241-42 (3/2/11 - "compliant with the meds" and "stable on meds" but "[c]oncentration and memory poor," "easily frustrated under pressure and low tolerance for stress," and "[m]ood swings present from high to low"); *id.* 330 (6/5/12 - "medication has been very helpful but [] he continues to have [i]ntermittent problems managing his anger.") In sum, plaintiff's overall diagnostic picture does not indicate that he experienced the level of sustained improvement of his symptoms that is necessary for him to work a full-time job, and as a result, plaintiff's occasional periods of improvement do not provide a legitimate reason supported by substantial evidence for rejecting Dr. Ruiz's opinion.

The ALJ also erred in finding that Dr. Ruiz's opinion should be discounted as inconsistent with plaintiff's daily activities and his performance in college courses. (A.R. 21-22.) It is not clear that plaintiff's ability to perform "all personal self-care activities independently; perform some household chores, errands, shopping and cooking; and manage his own money despite living in a transitional care facility" conflicts with Dr. Ruiz's opinion that plaintiff is moderately or markedly limited in all areas with respect to understanding, remembering, and carrying out instructions, and responding to work pressures in a work setting. More specifically, there is no indication that those activities required a level of concentration beyond what Dr. Ruiz assessed. Further, although plaintiff received passing grades in welding courses at Long Beach City College, he completed only 12 of the 60 units needed to complete the course, could not finish because he was unable to socialize with other students or even the teacher, and stopped going to class because he was experiencing panic attacks, mood swings, and problems concentrating and remembering. (A.R. 71; *see also id.* at 21 (ALJ states that plaintiff was unable to finish the welding program due to his "anxiety and depressive symptoms").) Accordingly, substantial evidence does not support the ALJ's determination that Dr. Ruiz's assessment of plaintiff's limitations is inconsistent with his very limited daily activities and his unsuccessful attempt to complete a vocational program at Long Beach City College. *See also* Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998) (reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding content or tone"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (noting that it was error for the ALJ to ignore or misstate competent evidence in the record to justify his conclusion).

Finally, the ALJ erred in finding that Dr. Ruiz's opinion was inconsistent with plaintiff's medical records and not well supported. The ALJ identified no specific inconsistency between Dr. Ruiz's opinion and plaintiff's treatment records. Instead, the ALJ merely stated that Dr. Ruiz's opinion is "not consistent with the actual medical records, and therefore [is] not given controlling weight." (A.R. 22.) The ALJ's conclusory assertion that Dr. Ruiz's opinion is not adequately supported is also not a specific reason supported by substantial evidence for discounting her opinion. *See* Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299 (9th Cir. 1999) (noting that

"conclusory reasons will not justify an ALJ's rejection of a medical opinion"); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("[b]road and vague" reasons for rejecting the treating physician's opinion do not suffice); Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretation and explain why they, rather than the doctors', are correct.").

Thus, the Court finds that the ALJ failed to give legally sufficient reasons for rejecting Dr. Ruiz's opinion.[3]

### C. Consultative Examiner Dr. Goldstein

The ALJ's assessment of plaintiff's RFC reflects many of the limitations identified by Dr. Goldstein, the examining psychiatrist, which suggests that the ALJ accorded more weight to Dr. Goldstein's opinion than to the opinion of either Dr. Ruiz or Dr. Hartley. For example, like Dr. Goldstein, the ALJ found that plaintiff was unable to perform work involving fast-paced quotas, public contact, and more than occasional contact with peers. However, plaintiff contends that the ALJ erred, because he failed to similarly adopt Dr. Goldstein's assessment that plaintiff is moderately limited in his ability to interact with supervisors. (Joint Stip. at 7-8.) In response, the Commissioner argues that the ALJ did not reject Dr. Goldstein's limitation regarding plaintiff's contact with supervisors, because the term "peers," as is used in the ALJ's RFC determination encompasses both plaintiff's coworkers and his supervisors. (Id. at 14.)

---

[3] Although the Commissioner offers additional justifications for the ALJ's rejection of the opinion of Dr. Ruiz, the Court cannot entertain these *post hoc* rationalizations. *See, e.g.*, Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely").

Although the ALJ was not required to accept Dr. Goldstein's opinion in full, he was required to articulate specific and legitimate reasons for rejecting portions of it. See Salvador v. Sullivan, 917 F.2d 13, 14 (9th Cir. 1990) (mere summarization and implicit rejection of physician's opinion does not suffice). Critically, the ALJ failed to incorporate several of Dr. Goldstein's assessed limitations on plaintiff's ability to work, including her assessment that plaintiff is moderately limited in his ability to maintain focus and concentration and moderately limited in his ability to respond to work pressure in a usual setting. Thus, regardless of the merits of the Commissioner's argument that the ALJ's limitation on interactions with "peers" encompassed Dr. Goldstein's limitation on interactions with "supervisors," the ALJ erred by failing to proffer any reason for failing to either incorporate all of Dr. Goldstein's assessed limitations or explain the dismissal of portions of Dr. Goldstein's opinion. On remand, the ALJ must reevaluate Dr. Goldstein's opinion and revisit his RFC assessment for plaintiff.

> D. Until The ALJ Has Properly Considered The Medical Opinion Evidence Regarding Plaintiff's Mental Limitations, The Court Cannot Assess The Adequacy Of The Hypothetical Posed To The VE.

For a VE's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews, 53 F.3d at 1044 (holding that hypothetical questions that do not include all of the plaintiff's limitations are insufficient and warrant remand). Because the ALJ did not properly evaluate the opinions of Drs. Ruiz and Goldstein, the Court cannot assess whether the hypothetical posed to the VE accurately reflected all of plaintiff's limitations. Thus, on remand, the ALJ must reevaluate the opinions of Drs. Ruiz and Goldstein in accordance with the governing legal standards and ensure that the hypothetical posed to the VE incorporates all of plaintiff's mental functioning limitations.

\\
\\
\\

## II. The ALJ Failed To Set Forth Clear And Convincing Reasons For Finding Plaintiff's Testimony Regarding His Subjective Symptoms To Be Not Credible.

Plaintiff stated in his 2011 Function Report that, because of his mental impairments and resulting symptoms, including mood swings and panic attacks, he finds it hard to "get along with others," including his family, and is "fatigue[d] and tired all day." (A.R. 207, 212.) He stated that he sleeps most of the day, even falling asleep at school, and sometimes neglects to bathe or perform basic personal hygiene. (*Id.* 208.) At the hearing, plaintiff testified that he gets panic attacks, "always fear[s] something happening," does not trust anyone, has nightmares, and believes that he would be "too depressed to even show up" for a simple, low stress job with no public contact. (*Id.* 71-72.) He testified that his fear of people and his "mood swings that [go] up and down" had kept him from applying for jobs. (*Id.* 75.)

The ALJ did not summarize plaintiff's testimony but found that: plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment in this decision," and plaintiff's statements that "he frequently felt fatigued, and did not like to be around other people" were inconsistent with his daily activities.[4] (A.R. 21-22.) Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony. (Joint Stip. at 17-18.)

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence

---

[4] The ALJ also observed that plaintiff's "contention of medication side effects is not confirmed in the record." (A.R. 21). However, plaintiff had not alleged significant medication side effects, testifying only that he *suspected* that the medications might be making him eat more (*id.* 72).

12

of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Id.* The factors to be considered in weighing a claimant's credibility include, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between the claimant's testimony and conduct; (3) the claimant's daily activities; and (4) the claimant's unexplained, or inadequately explained, failure to seek treatment. Orn, 495 F.3d at 636. Where, as here, the ALJ considers a claimant's daily activities, those activities bear on the plaintiff's credibility only if the level of activity is inconsistent with plaintiff's claimed limitations. *See* Reddick, 157 F.3d at 722. A claimant does not have to be completely incapacitated to be disabled. *See* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); *see also* Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); Gallant, 753 F.2d at 1453–55 (fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled).

The ALJ cited no evidence of malingering by plaintiff and concluded that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 21.) Nevertheless, the ALJ also determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (*Id.*) Because the ALJ found no evidence of malingering, the ALJ was required to articulate "clear and convincing" reasons for discounting plaintiff's subjective symptom testimony.

Although the ALJ limited plaintiff to no work requiring public contact and no work involving more than occasional contact with peers, he specifically rejected plaintiff's statement in the 2011

Function Report that he "frequently felt fatigued, and did not like to be around other people." (A.R. 22.) The ALJ found that this statement to be inconsistent with plaintiff's ability to attend school and perform his daily activities, *i.e.* preparing meals, doing laundry, making the bed, using public transportation, going shopping occasionally, and socializing with his girlfriend and family. (*Id.*) However, the ALJ failed to specifically articulate *how* plaintiff's ability to prepare meals, do laundry, make the bed, shop occasionally, use public transportation, and socialize with his girlfriend and family conflicts with plaintiff's allegations that he experiences severe anxiety, panic attacks, mood swings, fatigue, and depression. Furthermore, plaintiff's ability to perform these limited daily activities does not indicate an ability to hold down a full-time job. In addition, although plaintiff stated that he did socialize with his girlfriend and family, the record showed that his mental impairments made it difficult for him to get along with his family. (A.R. 212, 214.) Finally, as explained in connection with the ALJ's rejection of Dr. Ruiz's opinion, plaintiff's unsuccessful attempt to attend school, is not a clear and convincing reason for discrediting plaintiff's symptom testimony about the intensity, persistence, and limiting effects of his mental impairments.

Accordingly, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony. Thus, on remand, the ALJ must reevaluate plaintiff's credibility and provide clear and convincing reasons for discounting any portion of plaintiff's subjective symptom testimony, so that a reviewing court may know the basis for the ALJ's decision and have the ability to assess the propriety of that decision.[5]

\\
\\
\\

---

[5] While the Commissioner provides additional justifications for the ALJ's adverse credibility determination (*see* Joint Stip. at 20-22), the Court cannot affirm the ALJ's decision on the basis of these *post hoc* rationalizations. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

### III. The ALJ Failed To Properly Consider The Lay Witness Statements.

Plaintiff's final argument is that the ALJ failed to provide germane reasons for rejecting the third-party statement of his girlfriend, Samantha Jones. (Joint Stip. at 25-26.) In a February 13, 2011 Third Party Function Report, Jones reported that plaintiff has difficulty concentrating, fears socializing and being around others, and suffers mood swings and depression. (A.R. 199.) She wrote that plaintiff "sleeps most of the day" and "sleeps too much," is sometimes too depressed to bathe and too tired to shave, is "very forgetful" about his personal needs, and needs to be encouraged to wash his clothes. (*Id.* 200-01.) She stated that plaintiff performs about two hours worth of household chores and two hours of shopping over the course of a week. (*Id.* 201, 202.) Jones reported that plaintiff's mood swings and depression "cause confrontations with family and friends" and he "lacks interest in social activities." (*Id.* 204.) She added that "[o]ut of nowhere [plaintiff] will have paranoia and anxiety attacks [that affect] his ability to communicate" and "[h]is mood swings are very frequent[,] which affects [his] ability to get along with others" as well as Jones' willingness to be around him. (*Id.* 206.)

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(d)(4) ("[W]e may also use evidence from other sources to show the severity of your impairment(s) . . . . Other sources include, but are not limited to . . . spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy"). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness[,]'" Bruce v. Astrue, 557 F.3d 1113, 1114 (9th Cir. 2009) (citation omitted), and the reasons must be specific. Stout, 454 F.3d at 1054.

Where, as here, an ALJ fails to discuss competent lay witness testimony favorable to the

claimant, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different determination." Stout, 454 F.3d at 1056. However, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness'] claims.'" Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal citation omitted).

The Commissioner contends that any error was harmless, because Jones' statement mirrored plaintiff's testimony and, thus, the ALJ presumably rejected Jones' statement for the same reasons that he rejected plaintiff's testimony -- namely, plaintiff's ability to perform limited daily activities and his unsuccessful attempt to complete a welding program. (Joint Stip. at 17.) As explained above, the reasons the ALJ gave for rejecting plaintiff's testimony were not legitimate reasons for discrediting plaintiff's subjective symptom testimony. They are also not germane reasons for discrediting Jones' statements, because neither plaintiff's daily activities nor his educational efforts indicate that the intensity, persistence, and limiting effects of his symptoms are less than what he alleges. Accordingly, on remand, the ALJ must reevaluate the lay witness testimony and articulate specific and germane reasons for rejecting any portion of it.

### IV. Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all

the evidence were properly evaluated, remand is appropriate. *Id.* at 1179–81.

Thus, on remand, the ALJ must: (1) reconsider the medical opinions, including those provided by Drs. Ruiz and Goldstein, and either credit those opinions or provide specific and legitimate reasons for rejecting them in accordance with the appropriate legal standards; (2) reevaluate plaintiff's credibility and provide clear and convincing reasons for discounting any portion of plaintiff's subjective symptom testimony; (3) reconsider the statements of lay witness Samantha Jones and either credit it or provide germane reasons for rejecting it; (4) reevaluate plaintiff's RFC determination in the light of the reconsidered evidence; and then (5) proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: April 27, 2015

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE